DISTRICT OF OREGON
**F I L E D**
January 07, 2009
Clerk, U.S. Bankruptcy Court

Below is an Order of the Court.

_____
TRISH M. BROWN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In re ) Case No. 05-30162-tmb13
)
ROBERT MIDGLEY and ) MEMORANDUM OPINION
KAREN MIDGLEY, )
)
Debtors. )

FACTS

This matter came before the court for hearing on October 22, 2008, on the Debtors' objection to the Trustee's modified plan. The Trustee was represented by Wayne Godare. The Debtors were represented by Rex Daines. I announced my ruling at that hearing. An code overruling Debtors' objection and approving the amended plan was entered on October 28, 2008.

FACTS

The facts in this case are undisputed. The Debtors filed a voluntary Chapter 13 petition on January 7, 2005. At the time of filing, Debtors filed a Schedule I. Current Income of Individual Debtor(s) and a Schedule J. Current Expenditures of Individual Debtor(s). The Debtors' Schedule I showed a gross monthly income of $9,534 which equated to a gross annual income of $114,408. The Debtors' net monthly income was $5,972. Their Schedule J showed monthly expenses of $5,517, leaving them with $455 per month in disposable income. Their plan, confirmed on March 17, 2005, required payment of $455 per month for 36 months.

Page 1 - MEMORANDUM OPINION

The Order Confirming Plan and Resolving Motions (the "OCP") required that the Debtors "report immediately, upon receipt of notice of the change, to the trustee if actual or projected gross annual income exceeds by more than 10% the gross income projected by the debtor in the most recently filed Schedule I." (OCP at ¶2)  The OCP also required that the Debtors timely file all required tax returns and "provide copies of all tax returns to the trustee each year immediately upon filing with the taxing authority." (OCP at ¶3)

Despite the language of the OCP, the Debtors did not timely provide the Trustee with copies of their 2005 or 2006 tax returns. The Trustee requested the 2005 returns on November 11, 2006, and again on February 9, 2007. He finally received the 2005 returns on March 8, 2007. The Trustee requested the 2006 returns on August 15, 2007, December 11, 2007, and February 1, 2008. He received those returns on March 12, 2008. Upon analysis, the Trustee determined that the Debtors' gross income in 2005 was $150,781 (31% more than the gross income shown on the Debtors' Schedule I) and their gross income in 2006 was $154,301 (34.8% more than the gross income shown on the Debtors' Schedule I.)  Thus, in the first two years of the plan the Debtors' income was $76,366 more than shown on Schedule I.

The Trustee filed a modified plan on June 3, 2008. His purpose in filing the plan was to "capture a dividend for debtors' unsecured creditors based on debtors' unreported increase in gross income for the years 2005 and 2006 totaling more than $76,000." (Tr's. Mem. in Supp. of Mod. Plan dated June 3, 2008). Under the modified plan the Debtors' monthly payments remained unchanged. However, paragraph 10 of the plan provides that "[i]n order to account for unreported increased income received by the debtors during the first 36 months, debtors shall pay not less than $19,500.00 to the Trustee for distribution through the plan after all obligations under the first 36 months have been satisfied." (Notice of Post-Conf. Modif. of Plan and Am. Ch. 13 Plan dated 06/03/08 at 4).

The Debtors objected to the modified plan on several grounds. First, they contend that the modified plan is not authorized by the Bankruptcy Code. They further contend that the plan improperly requires that they pay their actual disposable income to the plan rather than their projected disposable income. In addition, they contend that the modified plan improperly incorporates the disposable income test of 11 U.S.C. § 1325(b).

Page 2 - MEMORANDUM OPINION

# LEGAL ANALYSIS

Modification of a Chapter 13 plan is governed by § 1329 of the Code[1]. This section provided, in relevant part:

> "(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> > (2) extend or reduce the time for such payments; or
> > (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." (emphasis added)

According to the Debtors, subsection (a)(1) only allows a change in the timing or amount of payments and not the total amount that a creditor will receive during the life of the plan. Under their analysis, if a plan provides for a payment of $100 to a creditor at $2.00 per month for 50 months, § 1329(a)(1) allows modification of the plan to pay the creditor two payments of $50 each, but does not allow a modification that increases (or decreases) the total amount the creditor will receive. They contend that this reading of § 1329(a)(1) is compelled by the language of § 1329(a)(3) and the cannons of statutory construction.

Subsection 1329(a)(3) specifically provided for modification of a plan to change the amount of the distribution to a creditor to account for payments made outside the plan. According to the Debtors, the term "distribution" as used in subsection (a)(3) is different from "payments" as used in subsection (a)(1). They contend that "'Amount of Distribution' is the total amount a creditor will received [sic] throughout a case, 'Amount of Payments' and 'Time for such Payments' is the manner in which the total distributions are made." (Debtors' Mem. in Supp. of Obj. to Trustee's Mod. Plan at 4). Ergo, they argue, the only time a modified plan may change the total amount a creditor will receive under a plan is when that creditor has

---

[1] This case was filed prior to the adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). All statutory citations to the Code refer to the pre-BAPCPA code unless otherwise stated.

Page 3 - MEMORANDUM OPINION

received payments outside the plan. The Debtors acknowledge that their position, if adopted, would cut both ways, i.e., just as a plan could never be modified to increase the amount to be received by an unsecured creditor, except as provided in § 1329(a)(3), nor could it be modified to reduce that amount.

The Debtors cite no case law in support of this argument and I was unable to find any case law directly on point. However, there are a number of cases in which the parties argued as to <u>when</u> a plan could be modified to increase payments to a class of creditors, impliedly recognizing that such increases are appropriate under § 1329(a)(1). <u>See, e.g.</u>, <u>In re Anderson</u>, 21 F.3d 355 (9th Cir. 1994) (recognizing a trustee's right to seek modification of the debtors' plan under § 1329(a)(1) should the debtors' income increase); <u>In re Than</u>, 215 B.R. 430 (9th Cir. BAP 1997) (assignee of unsecured creditor's claim had standing to file modified plan to increase payout to unsecured creditors); and <u>In re Powers</u>, 202 B.R. 618 (9th Cir. BAP 1996) (change in circumstances not necessary to justify a trustee's modified plan which increased debtor's plan payments based on post petition increase in income.)

Debtors' argument flies in the face of common practice in this district. The courts in this district have uniformly recognized that a debtor's fortunes may change for the worse during the life of the plan, making it impossible for the debtor to complete the plan as confirmed. In such cases, courts in this district allow the debtor to modify his or her plan in order to complete the plan and obtain a discharge. <u>See also</u> 8 Collier on Bankruptcy ¶ 1329.02 (15th rev. ed. 2008) ("a debtor may wish to modify a plan for any number of reasons . . . . The debtor's income may decrease, necessitating a reduction in payments.")

The Debtors argue that it is not necessary for the court to allow such downward modification. They contend that if a debtor is unable, due to a reversal of fortune, to complete his or her initial confirmed plan he or she may still obtain a hardship discharge under § 1328(b) or convert his or her case to one under Chapter 7. This argument ignores the fact that a discharge under § 1328(a) is broader than a discharge under either § 1328(b) or § 524. More importantly, a debtor may obtain a discharge under § 1328(b) only if "modification of the plan under § 1329 . . . is not practicable." 11 U.S.C. § 1328(b)(3). Accordingly, I find that there is no merit to the argument that § 1329(a)(1) cannot be used to increase or decrease the total amount of the distribution a creditor receives under a plan.

Page 4 - MEMORANDUM OPINION

The Debtors also take the position that modification of their plan to increase distribution to a class of creditors is prohibited by the doctrine of res judicata. In <u>In re Powers</u>, 202 B.R.618 (9th Cir. BAP 1996), the court addressed the issue of whether the doctrine of res judicata prohibited modification of a confirmed plan absent a substantial change in the debtors' circumstances and concluded that it did not. In doing so, it noted that the substantial change standard, required by some courts as a prerequisite to plan modification, "derives from the belief that res judicata acts as a bar to modification of the plan" but concluded that "res judicata does not apply when a contrary statutory purpose is evident." <u>Id.</u> at 622. The court went on to state: "[t]he statutory framework of the Code assumes the possibility of post-confirmation modifications. Modification pursuant to § 1329 provides a mechanism to change the binding effect of § 1327. Had Congress intended res judicata to apply, there would be little or no reason for the existence of § 1329." <u>Id.</u> Accordingly, the Debtors' res judicata argument is also without merit.

The Debtors contend that the Trustee's proposed plan would compel them to pay actual, as opposed to projected, disposable income into their plan in violation of the holding in <u>Anderson</u>, <u>supra</u>. I disagree with the Debtors' contention.

In <u>Anderson</u>, the trustee sought to compel the debtors to sign a Best Efforts Certification which would allow the trustee to "determine the Andersons' actual disposable income by periodic review of their financial status and then automatically adjust their payments." <u>Anderson</u>, 21 F.3d at 357. The debtors refused to sign the certification and, as a result, the trustee objected to confirmation of their plan. The court denied confirmation based on the debtors' refusal to sign the Best Efforts Certification and the debtors appealed.

On appeal the trustee argued that the debtors should be required to sign the certification as a prerequisite to confirmation because the projected plan payment "does not assure that the Andersons will pay all actual disposable income during the life of the plan." <u>Id.</u> at 358. The court rejected that argument based on its conclusion that § 1325(b)(1)(B) does not require a debtor to give assurance that he will pay all <u>actual</u> disposable income into the plan over the life of the plan. Rather, it found, § 1325(b)(1)(B) only required that the debtor commit to pay all <u>projected</u> disposable income, as calculated at time of confirmation, into the

Page 5 - MEMORANDUM OPINION

plan.

The Anderson court left open the possibility that the trustee could seek a post confirmation modification of the debtors' plan if their income increased, but held that "[t]he Trustee's efforts to force the Andersons to agree to a periodic adjustment of their payments without a court order is inconsistent with the procedures established for modifying a debtor's plan." Id. In other words, the holding of Anderson isn't that a plan can never be modified to account for increases in the debtors' income, but rather that such modification must be done in accordance with the provisions of § 1329, which is exactly what the Trustee has done in this case.

Unfortunately, Debtors failed to disclose their increased income to the Trustee or timely provide him with copies of their tax returns, both of which were required by their confirmed plan. Consequently, the Trustee is now forced to file a plan to account for income the Debtors might have been required to pay had the Trustee filed a modified plan at an earlier date.

The court addressed a similar issue in In re Wetzel, 381 B.R. 247 (Bankr. E.D. Wis. 2008). In Wetzel, the debtors' confirmed plan required that they provide the trustee with copies of their post petition tax returns. When the trustee received the returns he learned that the debtors' annual income had grown from $36,350, the amount they projected at the time of filing in 2004, to $99,644 in 2005 and $136,705 in 2006. The trustee then filed a modified plan which provided for an increase in plan payments from $1,000 per month to $2,700 and to increase the number of payments from 36 to 60. The Debtors objected to the proposed modification as untimely. The court rejected this argument, noting that the debtors "as far as the court knows, did nothing to alert the Trustee [to the increase in their income] and therefore, cannot be heard to complain when the Trustee gleaned the situation from tax returns." Id. at 251.

This case is more egregious than Wetzel in that it appears from the Wetzel opinion that the debtors timely provided the trustee with copies of their tax returns and he simply failed to act on that information for over a year. In this case by contrast, the Debtors ignored their obligation to provide the Trustee with tax returns until he made repeated demands for those returns. In addition, there is nothing in Wetzel to suggest that the debtors had an obligation to advise the trustee of increases in income, whereas the Debtors in this

Page 6 - MEMORANDUM OPINION

case had such an obligation and chose to ignore it. Under these circumstances, the Trustee's modification of the Debtors' plan was timely.

The Debtors further contend, citing In In re Sunahara, 326 B.R. 768 (9th Cir. BAP. 2005), that the proposed plan improperly incorporates the disposable income requirement of § 1325(b). In Sunahara, the BAP held that "the plain language of § 1329(b) does not mandate satisfaction of the disposable income test of § 1325(b)(1)(B) with respect to modified plans." Id. at 781. However, while Sunahara recognized that § 1325(b) is not applicable to modified plans, it did not hold that disposable income should not be considered in determining whether to authorize a proposed modification. To the contrary, it held that while the disposable income test is not directly implicated in a modified plan, "important components of the disposable income test are employed as part of a more general analysis of the total circumstances mitigating in favor of or against the approval of modification . . . ." Id. Thus, disposable income is one of many factors the court may, and should, consider in determining whether to confirm this plan.

Debtors' failure to comply with the terms of their plan with respect to providing tax returns and advising the trustee of significant increases in income, combined with their apparent ability to pay more to their creditors than they are currently paying, are factors that mitigate in favor of approval of the Trustee's proposed plan.

Section 1329(b)(1) provides that "sections 1322(a), 1322(b) and 1323(c) of this title and the requirements of § 1325(a) of this title apply to any modification under subsection (a) of this section. Sections 1322(a) and (b) govern the contents of the plan, i.e., it must provide for submission of future earnings, payment of priority claims, designation of classes, etc. The Trustee's proposed plan complies with all of the requirements of §§ 1322(a) and (b). Section 1323(c) provides that creditors who have accepted or rejected a plan are deemed to have accepted or rejected a modified plan unless their rights under the modified plan differ from those in the initial plan. All objections to the Debtors' initial plan were resolved. No creditors are adversely effected by the modified plan. Accordingly, § 1323(c) is inapplicable here. That leaves § 1325(a).

Page 7 - MEMORANDUM OPINION

Section 1325(a) states:

"(a) Except as provided in subsection (b), the court <u>shall</u> confirm a plan if—

    (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
    (2) any fee, charge, or amount required under chapter 123 of title 28 [28 USC §§ 1911 et seq.] , or by the plan, to be paid before confirmation, has been paid;
    (3) the plan has been proposed in good faith and not by any means forbidden by law;
    (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
    (5) with respect to each allowed secured claim provided for by the plan—
        (A) the holder of such claim has accepted the plan;
        (B)(I) the plan provides that the holder of such claim retain the lien securing such claim; and
          (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
        (C) the debtor surrenders the property securing such claim to such holder; and
    (6) the debtor will be able to make all payments under the plan and comply with the plan."

Section 1325(a) does not state "that the court shall confirm a plan *only if* certain requirements are met. Instead, it states only that if its criteria are met the court <u>must</u> confirm the plan." 8 Collier on Bankruptcy ¶ 1325.01 (15th rev. ed. 2008) (emphasis added)(footnote omitted). The plan in this case meets each of the criteria of § 1325(a).

As a final matter, I note that the Debtors contend that the Trustee breached his duties under the Code in filing the modified plan. They argue that the Trustee's only duty to unsecured creditors "is to promptly distribute the money to which they are entitled" and that he has no duty to maximize distribution to unsecured creditors. In fact, they argue that the Trustee has a duty to "assist the debtor in performance under the plan." Here, they contend, the modified plan "makes it more difficult for the debtor [sic] to complete the plan." (Debtors' Mem. in Supp. of Obj. to Trustee's Mod. Plan at 6). I disagree with the Debtors' contention that a Chapter 13 Trustee has no duty to creditors.

Under § 704, as incorporated by § 1302, the trustee has the duty to investigate a debtor's financial affairs. Section 1325(b) grants the trustee the power to protect the rights of unsecured creditors by objecting

Page 8 - MEMORANDUM OPINION

to confirmation of a proposed plan unless the plan provides for full payment of all allowed unsecured claims or commits all of the debtor's projected disposable income to the plan. Similarly, under § 1329(b) the trustee has the right, under appropriate circumstances, to propose a plan which will increase payments to unsecured creditors. See In re Kagenveama, 541 F.3d 868, 875 (9th Cir. 2008) ("if the debtor's income increases after the plan is confirmed, the trustee may seek plan modification under § 1329.")[2] In fact, contrary to the debtors' assertion, "the primary purpose of the Chapter 13 trustee is . . . to serve the interests of all creditors." Andrews v. Loheit (In re Andrews), 49 F.3d 1404, 1407-08 (9th Cir. 1995). See also In re Hill, 268 B.R. 548, 555, (9th Cir. BAP 2001) ("the trustee is charged with serving the interests of all creditors, secured and unsecured.")

The Trustee, after investigating the Debtors' financial affairs, concluded that they had the ability to increase the distribution to unsecured creditors but had not done so. In light of that information, the Trustee had an obligation to the creditors to file a modified plan which would maximize the distribution creditors would receive. Accordingly, his actions in filing the modified plan breached no duty to the Debtors.

###

cc: Rex K. Daines
    Wayne Godare

---

[2] Kagenveama was decided under the Code as amended by BAPCPA. The BAPCPA modified § 1329(a) to add a provision allowing a debtor to reduce amounts to be paid under the plan, under certain circumstances, by the actual amount expended by the debtor to purchase health insurance. BAPCPA made no other changes to § 1329(a).

Page 9 - MEMORANDUM OPINION